# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

DAVID MICHAEL NEELIS,

        Petitioner,               Case Number: 04-CV-72306

v.                                        HON. NANCY G. EDMUNDS

PAUL RENICO,

        Respondent.
_____/

## OPINION AND ORDER DENYING
## PETITION FOR WRIT OF HABEAS CORPUS

Petitioner David Michael Neelis has filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner is incarcerated at the St. Louis Correctional Facility in St. Louis, Michigan, pursuant to convictions for armed robbery, conspiracy to commit armed robbery, and possession of a firearm during the commission of a felony. For the reasons set forth below, the Court denies the petition.

## I.

Petitioner's convictions arise out of the robbery of Maiden's Trading Post in Vandercook Lake, Michigan. The Michigan Court of Appeals set forth the facts supporting Petitioner's convictions as follows:

> This case arose from a robbery of Maiden's Trading Post. Three men wearing black clothes and ski masks entered the store at approximately 9:00 a.m. One of the men pointed a pistol at the storeowner. During the robbery, the storeowner received a black eye, and his grandsons were bound with duct tape. Approximately $11,000 was stolen from the store. The

three men escaped in a black Pontiac Grand Am, later identified as belonging to Annette Bennett, with whom defendant Eison was living. The driver of the "get away" vehicle was later identified as Chad Farquhar, also residing with defendant Eison and Bennett.

Neelis, slip op. at 1-2.

## II.

Petitioner was tried jointly with co-defendants Ryan Palmer and Earnest Eison in Jackson County Circuit Court. Petitioner was convicted of armed robbery, conspiracy to commit armed robbery, and possession of a firearm during the commission of a felony. On July 19, 2000, he was sentenced as a fourth habitual offender to 12½ to thirty years imprisonment each for the armed robbery and conspiracy convictions, to be served concurrently with one another and consecutively to the felony-firearm conviction.

Petitioner filed an appeal in the Michigan Court of Appeals, presenting the following claims:

    I.     The trial judge deprived Mr. Neelis of his state and federal constitutional rights to a fair trial by refusing to sever his trial from that of his co-defendants and led to the admission of evidence which would not have been admitted against Mr. Neelis at a separate trial.

    II.    The prosecution violated Mr. Neelis' rights under the federal and state constitution by misleading the jury into believing that Mr. Farquhar would receive nothing in exchange for testifying against Mr. Neelis and the other defendants and by purposefully delaying the proceedings against Mr. Farquhar until after the trial of Mr. Neelis and the other defendants to gain an unfair tactical advantage.

    III.   Defendant was denied due process by the government's intimidation of a prosecution witness, which resulted in her making incriminating statements affecting all defendants, the prosecutor also denied defendant a fair trial by calling the witness in order to introduce the prior statements.

The Michigan Court of Appeals affirmed Petitioner's convictions. People v. Neelis, No. 229166 (Mich. Ct. App. Dec. 3, 2002).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, presenting the same claims presented to the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. People v. Neelis, 468 Mich. 940 (Mich. June 30, 2003).

Petitioner then filed the pending petition for a writ of habeas corpus, raising the same claims presented in state court.

### III.

### A.

28 U.S.C. § 2254(d) imposes the following standard of review on federal courts reviewing applications for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an

unreasonable application of clearly established federal law. Franklin v. Francis, 144 F.3d 429 (6th Cir. 1998). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1)[1]; *see also* Cremeans v. Chapleau, 62 F.3d 167, 169 (6th Cir. 1995) ("We give complete deference to state court findings unless they are clearly erroneous").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." Id. at 409. The Court defined "unreasonable application" as follows:

---

[1]   28 U.S.C. § 2254(e)(1) provides, in pertinent part:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . .
>
> [A]n unreasonable application of federal law is different from an incorrect application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

Id. at 409-11.

### B.

In his first claim for habeas corpus relief, Petitioner argues that the trial court erred in denying his motion to sever his trial from that of co-defendants Palmer and Eison because failure to sever the trials resulted in the admission of Palmer's out-of-court hearsay statements in violation of Bruton v. United States, 391 U.S. 123 (1968).

The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "The Sixth Amendment's right of an accused to confront the witnesses against him is . . . a fundamental right and is made obligatory on the States by the Fourteenth Amendment." Pointer v. Texas, 380 U.S. 400, 403 (1965). The rights of confrontation and cross-examination "have ancient roots" which the "Court has been zealous to protect . . . from erosion." Id., at 404-05 (internal quotation omitted). The right to a trial by jury is predicated upon the belief "'that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there

is full judicial protection of the defendant's right of confrontation, of cross examination, and of counsel.'" Id. at 405, *quoting* Turner v. State of Louisiana, 379 U.S. 466, 472-73 (1965).

Statements by a non-testifying co-defendant that implicate a defendant are presumptively unreliable. Douglas v. Alabama, 380 U.S. 415, 419 (1965). In Richardson v. Marsh, 481 U.S. 200 (1987), the Supreme Court discussed the applicability of Bruton to a non-testifying co-defendant's statement which is not facially incriminating to the defendant. The Court noted that Bruton involved a codefendant's confession which "expressly implicat[ed]" the defendant as his accomplice. Id. at 208, *quoting* Bruton, 391 U.S. at 135. In Richardson, the "confession was not incriminating on its face, and became so only when linked with evidence introduced later at trial." Id. The Court held that where the statement of a nontestifying codefendant is not facially incriminating and the jury is given a limiting instruction, admission of the statement does not violate a defendant's right to confrontation. Id. at 207-09. In distinguishing this inferential incrimination from the direct incrimination presented in Bruton, the Court reasoned as follows:

> Where the necessity of such linkage is involved, it is a less valid generalization that the jury will likely not obey the instruction to disregard the evidence. Specific testimony that 'the defendant helped me commit the crime' is more vivid that inferential incrimination, and hence more difficult to thrust out of mind. Moreover, with regard to such an explicit statement the only issue is, plain and simply, whether the jury can possibly be expected to forget it in assessing the defendant's guilt; whereas with regard to inferential incrimination the judge's instruction may well be successful in dissuading the jury from entering onto the path of inference in the first

>place, so that there is no incrimination to forget.  In short, while it may not always be simple for members of a jury to obey the instruction that they disregard an incriminating inference, there does not exist the overwhelming probability of their inability to do so that is the foundation of Bruton's exception to the general rule.

Richardson, 481 U.S. at 208.

The Michigan Court of Appeals analysis, although not citing Supreme Court precedent, relied upon state court cases, People v. Perez-DeLeon, 224 Mich. App. 43 (Mich. Ct. App. 1997) and People v. Frazier, 446 Mich. 539 (1996), which utilized the Bruton and Richardson standards.  The Michigan Court of Appeals held that the challenged out-of-court statements were not facially incriminating with respect to Petitioner and that the jury was cautioned not to consider this testimony as substantive evidence against Petitioner.  This Court agrees with the Michigan Court of Appeals finding that the cautionary jury instructions could have been clearer.  However, the Court finds that the state court's conclusion that the testimony was properly admitted because it was not facially incriminating was not contrary to or an unreasonable application of Bruton or Richardson.

In addition, Petitioner claims that the trial court erred in denying his motion to sever his trial from that of his codefendants.  "Courts should grant a severance 'only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence.'" Stanford v. Parker, 266 F.3d 458-59 (6th Cir. 2001), *quoting* Zafiro v. United States, 506 U.S. 534, 539 (1993).  Joint trials "play a vital role in the criminal justice

system." Richardson, 481 U.S. at 209. The decision whether to grant a motion for severance is within the trial judge's discretion, and an "alleged abuse of [that] discretion, without more, is not a constitutional violation." Id.

Petitioner rests his claim that the trial court erred in denying his motion to sever on the contention that the failure to sever resulted in a Bruton violation. As discussed above, no Bruton violation occurred. Therefore, Petitioner has failed to show that the denial of the motion to sever compromised a specific trial right or denied him his right to a fair trial. Accordingly, the Court denies habeas corpus relief on this claim.

## C.

Petitioner next claims that the prosecutor misled the jury to believe that a witness, Chad Farquhar, would not receive any benefit from testifying against Petitioner and that the prosecutor intentionally delayed the proceedings against Farquhar until after Petitioner's trial concluded.

Farquhar was initially charged along with Petitioner and his co-defendants. Prior to trial, the prosecution moved to sever Farquhar's trial from that of Petitioner and his co-defendants. Defendants moved for disclosure of information regarding any consideration that had been offered to Farquhar in exchange for his testimony. The prosecutor stated that no deals had been offered to Farquhar. The prosecutor further stated that Farquhar testified at the preliminary examination that he was hoping not to be imprisoned for the rest of his life, but that the prosecutor's office had not made any offers in that regard.

The prosecution's alleged failure to disclose a plea agreement alleges a violation of

8

Brady v. Maryland, 373 U.S. 83 (1963). In Brady, the Supreme Court established that a prosecutor's failure to disclose evidence constitutes a denial of due process "where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87. "When the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility falls within this general rule." Giglio v. U.S., 405 U.S. 150, 154 (1972) (internal quotation omitted). The failure of the prosecution to divulge an agreement with a witness regarding future prosecution violates due process where the witness's testimony could "'in any reasonable likelihood have affected the judgment of the jury.'" Id., *quoting* Napue v. Illinois, 360 U.S. 264, 271 (1959).

The last state court to issue a reasoned opinion regarding Petitioner's claim, the Michigan Court of Appeals, stated, in relevant part:

> Defendants first argue that the trial court erred in denying their motion for a new trial or an evidentiary hearing because the prosecutor misrepresented that Farquhar was not promised anything in exchange for his testimony. We disagree. . . .
>
> Defendant argued before the trial court that Farquhar must have had a deal or promise of leniency before testifying. However, defendants did not present any facts to support their request for an evidentiary hearing or new trial, but instead relied upon speculation and inference. Indeed, we note that defendant Neelis conceded, . . . that transcripts from Farquhar's case did not specifically support their position. Neelis argued that Farquhar *possibly* received consideration for his testimony and that this fact was not disclosed to the jury. Defendants argued that Farquhar's transcripts *suggested* that there were negotiations for a deal before Farquhar testified. However, such a suggestion is contained in only one transcript from a hearing before the defendants' trial. Defendant Neelis later conceded that nothing in the transcripts specifically supported defendants' position that

9

Farquhar received a two to five year sentence in exchange for his testimony. Defendants nevertheless argued that it appeared that there *may* have been negotiations or discussions before trial and that an evidentiary hearing was warranted.

Our Supreme Court addressed a substantially similar situation in People v. Atkins, 397 Mich. 163; 243 N.W.2d 292 (1976). As in the case at bar, the Atkins defendant produced no evidence to support his claim that an agreement for a certain witness' testimony existed. Id. at 172. The defendant argued that it would be naive to believe that there was no actual or incipient deal, and it was obvious that even if there was no actual deal, the witness knew there would be one after he testified. Id. at 172-173. Although the witness' charges were dismissed after he testified, the prosecutor argued there was no agreement at the time of the defendant's trial. Id. at 173. The Court observed:

> . . . The course of required disclosure is not on factors which may motivate a prosecutor in dealing subsequently with a witness, but rather on facts which may motivate the witness in giving certain testimony. *Of the latter, this jury was made well aware by means of thorough and probing cross-examination by defense counsel.* [Id. at 173-174. (emphasis added [by Michigan Court of Appeals]).

Here, while both Farquhar and his counsel expected to receive some kind of consideration, no such offer had been made at the time of trial. We find the prosecutor was not required to disclose mere future possibilities. The record also discloses Farquhar's motivation for testifying was fully disclosed before the jury through cross-examination. The jury heard Farquhar testify that he did not expect to receive a life sentence and that he hoped for both leniency and a sentence that would run concurrent with his federal prison term. No false testimony stood uncorrected and no false representations were made. Therefore, following Atkins, we find no abuse of discretion in the trial court's denial of defendants' motion for a new trial or evidentiary hearing.[3]

_____

[3]We also find no merit to defendant Neelis' separate argument that the prosecutor's decision to delay a trial of Farquhar's case until after defendant's trial was improperly designed to gain an unfair tactical advantage. However, we note that the cases against Farquhar and the

> defendants were all resolved within a short time of one another and were all sentenced within a year. Defendant fails to otherwise explain or rationalize his position. An appellant may not lease it to this Court to discover and rationalize the basis for his claim.

Neelis, slip op. at 3-5.

In this case, however, Petitioner has failed to establish that any undisclosed agreement or understanding existed. At trial, Farquhar testified that hoped to avoid life imprisonment and that his sentence would run concurrently with a federal sentence. Farquhar may have hoped to avoid a life sentence by cooperating, but there is no evidence of any promises made to him. Moreover, Farquhar's expectations and hopes for leniency were placed before the jury and defense counsel had an opportunity to question him regarding his motives for testifying. Other than mere supposition, Petitioner fails to present any evidence to support his argument that Farquhar was given any undisclosed expectation or understanding of leniency in exchange for his testimony. Thus, the Michigan Court of Appeals' finding that no Brady violation occurred was not contrary to or an unreasonable application of Supreme Court precedent, and habeas relief shall be denied on this claim.

**D.**

Finally, Petitioner claims that the prosecutor intimidated witness Annette Bennett and that the prosecutor improperly called her to testify for the sole purpose of impeaching her with her preliminary examination testimony. Respondent argues that this claim is barred from review because it is procedurally defaulted.

> The doctrine of procedural default provides:
>
> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

Coleman v. Thompson, 501 U.S. 722, 750 (1991).  Such a default may occur if the state prisoner files an untimely appeal, Coleman, 501 U.S. at 750, if he fails to present an issue to a state appellate court at his only opportunity to do so, Rust v. Zent, 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something at trial to preserve his claimed error for appellate review, e.g., to make a contemporaneous objection, or file a motion for a directed verdict.  United States v. Frady, 456 U.S. 152, 167-69 (1982); Simpson v. Sparkman, 94 F.3d 199, 202 (6th Cir. 1996).  Application of the cause and prejudice test may be excused if a petitioner "presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent."  Rust, 17 F.3d at 162; Murray v. Carrier, 477 U.S. 478, 496 (1986).

For the doctrine of procedural default to apply, a firmly established state procedural rule applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with that state procedural rule.  Warner v. United States, 975 F.2d 1207, 1213-14 (6th Cir. 1992), *cert. denied*, 507 U.S. 932 (1993).  Additionally, the last state court from which the petitioner sought review must have invoked the state

procedural rule as a basis for its decision to reject review of the petitioner's federal claim. Coleman, 501 U.S. at 729-30. If the last state court from which the petitioner sought review affirmed the conviction both on the merits, and, alternatively, on a procedural ground, the procedural default bar is invoked and the petitioner must establish cause and prejudice in order for the federal court to review the petition. Rust, 17 F.3d at 161. If the last state court judgment contains no reasoning, but simply affirms the conviction in a standard order, the federal habeas court must look to the last reasoned state court judgment rejecting the federal claim and apply a presumption that later unexplained orders upholding the judgment or rejecting the same claim rested upon the same ground. Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).

This Court begins its analysis of whether Petitioner's prosecutorial misconduct claims are procedurally defaulted by looking to the last reasoned state court judgment denying Petitioner's claim. *See* Coleman, 501 U.S. at 729-30. The last state court to address this claim, the Michigan Court of Appeals, held that the issue was not preserved for appellate review because Petitioner failed to object to the prosecutor's conduct at trial. Neelis, slip op. at 6. The Sixth Circuit Court of Appeals has held that the failure to object rule is regularly followed by Michigan courts in the context of prosecutorial misconduct claims. Simpson v. Jones, 238 F.3d 399, 408 (6th Cir. 2000); Toler v. McGinnis, 23 Fed. Appx. 259, 269 (6th Cir. 2001). Accordingly, the state court's judgment clearly rested on a procedural bar and the doctrine of procedural default is invoked.

Therefore, this Court may not review Petitioner's claims unless he has established

cause for the default and actual prejudice as a result of the alleged violation of federal law or unless he has demonstrated that failure to consider this claim will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750.

Petitioner fails to allege cause to excuse the procedural default of this claim. Thus, this claim is procedurally defaulted unless Petitioner can establish that a constitutional error resulted in a fundamental miscarriage of justice. Schlup v. Delo, 513 U.S. 298 (1995).

The Supreme Court explicitly has tied the miscarriage of justice exception to procedural default to a petitioner's innocence. Schlup, 513 U.S. at 321. Thus, Petitioner must assert a constitutional error along with a claim of innocence. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." Id.

Petitioner has not supported his allegation of constitutional error with new reliable evidence of actual innocence that was not presented to the trial court. Accordingly, this claim is procedurally barred.

**IV.**

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.

        s/Nancy G. Edmunds  
        Nancy G. Edmunds  
        United States District Judge

Dated: March 6, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 6, 2006, by electronic and/or ordinary mail.

        s/Carol A. Hemeyer  
        Case Manager